JACK S. SHOLKOFF, CA Bar No. 145097
jack.sholkoff@ogletreedeakins.com
ANNIE H. CHO, CA Bar No. 269633
annie.cho@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants
C.H. ROBINSON COMPANY and
C.H. ROBINSON WORLDWIDE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LORRIE POUBLON, an individual, on behalf of herself, and on behalf of all persons similarly situated,

Plaintiff,

v.

C.H. ROBINSON COMPANY; C.H. ROBINSON WORLDWIDE, INC.; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:12-cv-06654-CAS-MAN

**EXHIBITS TO DECLARATION OF KATHY ARNOLD IN SUPPORT OF DEFENDANTS' MOTION TO STAY PURSUANT TO 9 U.S.C. § 3; AND TO DISMISS CLASS AND REPRESENTATIVE ALLEGATIONS**

[Volume II of II]

Complaint Filed: June 13, 2012
Judge: Hon. Christina A. Snyder
Courtroom: 5 – Spring Street
Magistrate Judge: Hon. Margaret A. Nagle
Courtroom: 580 – Roybal

Discovery Cut-off: None Set
Pretrial Conference Date: None Set
Trial Date: None Set

Hearing Date: December 17, 2012
Time: 10:00 a.m.

# EXHIBIT C

## Employment Dispute Mediation/Arbitration Procedure

This Employment Dispute Mediation/Arbitration Procedure offers a structure and ground rules for voluntary mediation, followed by mandatory arbitration of a discharge or other dispute between C.H. Robinson ("Company") and any employee or former employee ("Employee") who is covered by a Bonus Incentive Agreement. This Employment Dispute Mediation/Arbitration Procedure shall apply to all claims directly or indirectly related to your recruitment, employment, or termination of employment by the Company, including, but not limited to, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws against discrimination, but excluding Worker's Compensation Claims, claims related to unemployment insurance, and any post termination claims of the Company related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any employment agreement entered into between you and the Company.


- **The Employment Dispute Mediation Procedure**
  - (a) Proposing the Mediation Process
  - (b) Representation
  - (c) Selecting the Mediator
  - (d) Ground Rules of the Mediation Process
  - (e) Submission to the Mediator
  - (f) Negotiation of Settlement Terms
  - (g) Settlement
  - (h) Confidentiality
- **The Employment Dispute Arbitration Procedure**
  - (a) Exclusivity, Exhaustion, Waiver and Binding Effect
  - (b) Representation
  - (c) Initiation of Employment Dispute Arbitration Procedure and Time Limit for Counterclaims
  - (d) Timing and Method of Giving Notice
  - (e) The Arbitrator
  - (f) Venue and Place of Hearing
  - (g) Pre-Hearing Discovery
  - (h) Subpoenas
  - (i) Order of Presentation
  - (j) Applicable Law and Burden of Persuasion
  - (k) Evidence and Argument
  - (l) Confidentiality
  - (m) Expenses
  - (n) Record of Proceeding
  - (o) Damages and Relief
  - (p) Sanctions
  - (q) The Award
  - (r) Arbitration Statute
  - (s) Court and Administrative Proceedings
  - (t) Revision of Employment Dispute Arbitration Procedure
  - (u) Effectuation of Purpose




EXHIBIT C PAGE 72

**I. The Employment Dispute Mediation Procedure**

**(a) Proposing the Mediation Process**

If internal dispute resolution procedures or informal negotiations have failed to resolve an employment dispute, either the Company or the employee may unilaterally propose mediation by contacting the other party, orally or in writing, as required by the Predispute Resolution Agreement contained in the Bonus Incentive Agreement

**(b) Representation**

Each party may be represented by another person, of whose identity the other party shall be informed promptly. The representative may, but need not be, an attorney. The Company will not be represented by a practicing attorney unless the Employee is so represented. Each party shall be responsible for any fee charged by the party's own representative.

**(c) Selecting the Mediator**

Each party will submit to the other party the names of not less than three candidates, with their resumes and hourly rates. If the parties are unable to agree on a candidate from the list within seven days following receipt of the list, each party will, within 15 days following receipt of the list, send to the other party a list of three additional candidates. This process will be continued until the parties agree on a mediator.

Each party will promptly disclose to the other party any circumstances known to that party or the party's representative that would cause reasonable doubt regarding the impartiality of an individual under consideration or appointed as a mediator. That individual will promptly disclose any such circumstances to the parties. Upon such disclosure before or after the individual's appointment, the individual shall not serve, unless both parties and that individual otherwise agree in writing.

The amount and terms of the mediator's compensation will be agreed upon among the parties and the mediator before appointment. Such compensation, and any other costs of the process, will be borne by the Company, unless the parties otherwise agree in writing

**(d) Ground Rules of the Mediation Process**

Once a mediator has been selected and has agreed to serve, the representatives of the parties will meet jointly with the mediator to discuss the following ground rules and any different or additional ground rules the mediator or a party wishes to propose as to the manner in which the process is to be conducted:

i. The process is voluntary and non-binding.
ii. Each party may withdraw at any time after the first session and prior to execution of a written settlement agreement by written notice to the mediator and the other party.
iii. The mediator shall be neutral and impartial.
iv. The mediator shall control the procedural aspects of the mediation. The parties and their representatives will cooperate fully with the mediator.
    a. There will be no direct communication relating to the subject matter of the dispute between the parties or between their representatives without the assent of the mediator.
    b. The mediator is free to meet and communicate separately with each party.
    c. The mediator will decide when to hold separate meetings with the parties and when to hold joint meetings, and whether the meetings will be in person or over the telephone. The mediator will fix the time and place of each such session and the agenda, in consultation with the parties.
    d. The mediator will facilitate the development of material Information by one or both sides in an effort to resolve the dispute.

v. The mediator may withdraw at any time by written notice to the parties (i) for overriding personal reasons, (ii) if the mediator believes that either party is not acting in good faith, or (iii) if the mediator concludes that further mediation efforts would not be useful.

vi. At least one person--the party or the party's representative--will be authorized to negotiate a settlement of the dispute, and that authorization will be communicated to the mediator in writing signed by the respective party.

vii. The mediation process will be conducted expeditiously. Each party and representative will make every effort to be available for meetings.

viii. The mediator will not transmit information given by any party or the party's representative to another party, the other party's representative or any third party, unless authorized to do so by the party transmitting the information. Each party will call the mediator's attention to any matters that it regards as especially sensitive.

ix. The parties will refrain from pursuing administrative and/or judicial remedies during the mediation process, insofar as they can do so without prejudicing their legal rights. If an administrative action and/or litigation is pending between the parties regarding the subject matter of the mediation, the parties will jointly (a) inform the court or agency of the mediation process and the name of the mediator, (b) request that discovery in any such proceeding be suspended while the mediation is ongoing, (c) consent to and request a stay of such proceeding, and (d) take whatever other steps may be necessary in aid of the mediation process.

x. The mediator will be disqualified as a witness, consultant, expert or representative in any pending or future investigation, action or proceeding relating to the subject matter of the mediation (including any investigation, action or proceeding which involves persons not party to this mediation). The mediator and any documents and information in his or her possession will not be subpoenaed in any such investigation, action or proceeding, and both parties will oppose any effort to have the mediator and documents subpoenaed.

xi. If the dispute goes to arbitration, the mediator shall not serve as an arbitrator, unless the parties and the mediator otherwise agree in writing.

xii. The mediator shall not be liable to any party for any act or omission in connection with the mediation or application of the Employment Dispute Mediation Procedure.

xiii. The mediator, if a lawyer, if asked, may express his or her views to the parties on the legal issues of the dispute in aid of the mediation process, subject to any limitations under any applicable mediation statutes, rules, or ethical codes.

xiv. The mediator may obtain assistance and independent expert advice with the agreement and at the expense of the parties.

**(e) Submission to the Mediator**

Each party will submit to the mediator such information, including brief summaries of or original statements by the employee, the employee's supervisors and others, as each party deems necessary to familiarize the mediator with the dispute. Submissions may be made in writing and orally. The parties are encouraged to exchange written submissions.

The mediator may request any party at any stage of the proceeding to submit clarification and additional information, including the employee's personnel files and other relevant documents. The mediator also may request the opportunity to interview the employee's supervisor or other employees of the Company having relevant information.

The mediator may inquire about legal issues and parties' positions in order to evaluate the likely outcome of the dispute if it were to be litigated. The parties and their representatives will make reasonable efforts to submit promptly an explanation of the respective party's position and arguments on such legal questions.

At the conclusion of the mediation process, the mediator will return all written materials and information to the party who had provided them to the mediator.

**(f) Negotiation of Settlement Terms**

The mediator may promote settlement in any manner the mediator believes appropriate. Once the mediator is familiar with the case, the mediator will hold discussions with the parties or their representatives or both.

The parties are expected to initiate proposals for settlement. Each party should provide a rationale for any settlement terms it proposes.

If the parties fail to develop mutually acceptable settlement terms, before terminating the procedure the mediator may submit to the parties a settlement proposal. The parties will carefully consider and discuss such proposal with the mediator.

Efforts to reach a settlement will continue until (a) a written settlement is reached, or (b) the mediator concludes and informs the parties that further efforts would not be constructive, or (c) one of the parties or the mediator withdraws from the process by written notice.

All settlement proposals will be deemed confidential settlement communications under applicable federal or state rules

**(g) Settlement**

If a settlement is reached, the mediator or one of the parties will draft a written settlement document incorporating all settlement terms. This draft will be circulated expeditiously among the parties and mediator, amended as necessary, and formally executed, preferably before adjourning the session at which settlement is reached.

If administrative action or litigation is pending, the settlement will provide and the parties will arrange for dismissal of the case promptly upon execution of the settlement agreement. The parties may condition any settlement upon that dismissal.

**(h) Confidentiality**

The entire mediation process is confidential, except for the fact that the process has taken place. Unless otherwise agreed among the parties or required by law, the parties and the mediator shall not disclose to any person who is not associated with participants in the process, including any judicial officer, any information regarding the process (including pre-process exchanges and agreements), contents (including written and oral information), settlement terms or outcome of the proceeding, except that settlement terms may be disclosed in an action to enforce compliance therewith.

The entire mediation process is a compromise negotiation subject to Federal Rule of Evidence 408 and all state counterparts, together with any applicable statute protecting the confidentiality of mediation. All offers, promises, conduct and statements, whether oral or written, made in the course of the proceeding by any of the parties, their agents, employees, experts and attorneys, and by the mediator are confidential. Such offers, promises, conduct and statements are privileged under any applicable mediation privilege and are inadmissible and not discoverable for any purpose, including impeachment, in litigation or arbitration between the parties. However, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable solely as a result of its presentation or use during the mediation.

The exchange of any tangible materials shall be without prejudice to any claim that such material is privileged or protected as work-product within the meaning of Federal Rules of Civil Procedure 26 and all state and local counterparts.

The mediator and any documents and information in the mediator's possession will not be subpoenaed in any investigation, action or proceeding, and all parties will oppose any effort to have the mediator or documents subpoenaed. The mediator will promptly advise the parties of any attempt to compel him/her to divulge information received in mediation.

**II. The Employment Dispute Arbitration Procedure**

**(a) Exclusivity, Exhaustion, Waiver and Binding Effect**

Upon failure of the Employment Dispute Mediation Procedure, all Disputes shall be presented for resolution pursuant to this Employment Dispute Arbitration Procedure, which will be the exclusive remedy for resolution of Disputes. Resolution of any Dispute pursuant to the Employment Dispute Arbitration Procedure is final and binding on the parties to the fullest extent permitted by law. Even if judicially determined not to be final and binding, the Award of the Arbitrator shall be accorded the fullest weight permitted by law.

The Employee and Company expressly waive any right to resolve any Dispute through any other means, including by filing a lawsuit in court for trial by the court or before a jury. The Parties shall be precluded from bringing or raising in court or before another forum any Dispute which could have been brought or raised pursuant to this Employment Dispute Arbitration Procedure, unless the right to pursue a statutory claim or remedy is expressly preserved by law.

To the fullest extent permitted by applicable law, any party may seek temporary equitable relief in aid of arbitration in a court of competent jurisdiction.

**(b) Representation**

The Parties may be represented by counsel or by any individual of their choice. The Employee or Company shall initiate an arbitration in accordance with the applicable statute of limitations. A written agreement between the Parties to submit the Dispute to mediation shall toll the applicable statute of limitations until fifteen (15) days after the date on which either Party gives written notice to the other Party that the mediation has concluded. The failure of an Employee or the Company to initiate the Employment Dispute Arbitration Procedure within the time limits set forth in this paragraph shall be deemed a waiver and release of that Dispute, unless the right to pursue a statutory claim or remedy is expressly preserved by law.

**(c) Initiation of Employment Dispute Arbitration Procedure and Time Limit for Counterclaims**

To initiate the Employment Dispute Arbitration Procedure, the initiating party shall give written notice to the other party and to any person who is alleged to be personally liable in the Dispute. Written notice to the Company should be given to the Vice President, General Counsel and Secretary.

The notice shall include a statement of the nature of the claim together with the relevant facts, the remedies including any amount being sought, and the address that the claimant will use for the purpose of the Employment Dispute Arbitration Procedure.

Within thirty (30) days after the claimant's notice is given, the respondent shall give the claimant its answer. The answer shall state all available defenses, relevant facts thereto and any related counterclaims then known to the respondent.

Within thirty (30) days after the respondent's counterclaims are given, if any, the claimant shall give the respondent a statement of the claimant's defenses and relevant facts thereto.

Claims and counterclaims may be amended before selection of the Arbitrator and thereafter with the Arbitrator's consent. Notices of defense or replies to amended claims or counterclaims shall be delivered within thirty (30) days after the addition or amendment.

**(d) Timing and Method of Giving Notice**

Any notice, commencing with notice given pursuant to Article Seven, shall be deemed given for the purposes of the Employment Dispute Arbitration Procedure upon delivery by hand (including package delivery service or fax, with proof of delivery or transmission) or, if mailed, by depositing the notice in a postage-paid envelope, return receipt requested, in a U.S. Postal Service deposit box regularly maintained for this purpose.

The production of (i) an affidavit of service, (ii) a signed and dated acknowledgment of receipt, (iii) a signed and dated return receipt, or (iv) an electronically generated proof of fax transmission, shall be adequate proof to presume delivery.

**(e) The Arbitrator**

Any Dispute will be decided by a single decision-maker, called the "Arbitrator."

The Parties will attempt to agree on the selection of the Arbitrator. If the Parties do not promptly agree on an Arbitrator, either Party may request an independent ADR provider to nominate candidates.
Upon receiving such a request, the ADR provider shall first attempt to reach agreement between the Parties on the selection of an Arbitrator. Failing agreement, the ADR provider shall submit to the Parties a list of not less than five candidates who have been admitted to the bar for not less than ten years, who have had experience in employment law, and who have been screened for potential conflicts of interest. Such list shall include a brief statement of each candidate's professional background, qualifications and rate of compensation. Each Party shall number the candidates in order of preference and shall deliver the list so marked to the ADR provider. Any Party failing without good cause to return the candidate list so marked within ten days after receipt shall be deemed to have assented to all candidates listed thereon. The ADR provider shall designate as Arbitrator the nominee willing to serve for whom the Parties collectively have indicated the highest preference (i.e., by receiving the lowest combined score) and who does not appear to have a conflict of interest. If a tie should result between two candidates, the ADR provider may designate either candidate. If this procedure for any reason should fail to result in designation of the Arbitrator, or if the Arbitrator after appointment is disqualified or becomes unable to serve, the ADR provider shall appoint a person whom it deems qualified.

The Arbitrator shall be independent and impartial. The Arbitrator shall promptly disclose in writing to the Parties any circumstances that might cause doubt regarding the Arbitrator's independence or impartiality. The Arbitrator may be challenged for cause if circumstances exist or arise that give rise to justifiable doubt regarding the Arbitrator's independence or impartiality. The fact that the Arbitrator's practice consists predominantly of representing Companies or employees shall be disclosed in the statement of professional background but shall not be a basis for a cause challenge. When an Arbitrator has been challenged for cause by a Party, the other Party may agree to the challenge or the Arbitrator may voluntarily withdraw.

Unless the parties agree otherwise, all Disputes related to the Employee shall be submitted in the same proceeding to the Arbitrator.

The Arbitrator may hold a management conference with the parties and/or their representatives, in person or by telephone, to resolve matters that will expedite the proceedings.

**(f) Venue and Place of Hearing**

The venue of any Dispute shall be Hennepin County, MN. Unless the Parties otherwise agree or the Arbitrator otherwise directs for good reason, any hearing shall be conducted and deemed held in that county of venue, at a place convenient to the Parties as so designated by the Arbitrator.

**(g) Pre-Hearing Discovery**

The Parties shall cooperate in the voluntary exchange of such documents and information as will serve to expedite the resolution of the Dispute in arbitration.

Discovery shall be conducted in the most expeditious and cost-effective manner practicable, and shall be limited to that which is relevant and material to the Dispute and for which each Party has a substantial, demonstrable need.

Upon request, either Party shall be entitled to receive, prior to the hearing, information and copies of documents that meet the criteria for discovery. Upon request, the Employee shall also be entitled to a true copy of his or her personnel records kept in the ordinary course of business (including without limitation any and all performance valuations), other than records relating to pre-employment procedures and any reference checks, subject to any condition or limitation imposed by the Arbitrator upon a showing of good cause.

Upon request, the Employee shall be entitled, at least thirty (30) days in advance of the commencement of the hearing, to take at least one deposition of an Company representative designated by the Employee. Upon request, the Company shall be entitled, at least thirty (30) days in advance of the commencement of the hearing, to take the deposition of the Employee. Any disputes relative to discovery shall be presented to the Arbitrator for final and binding resolution. The Arbitrator may grant, upon good cause shown, either Party's request for discovery in addition to or limiting that for which this paragraph expressly provides

**(h) Subpoenas**

Counsel may issue subpoenas of witnesses or documents for the hearing to the extent permitted by applicable law. A party not represented by counsel may request that the Arbitrator issue a subpoena on his or her behalf. The Arbitrator is empowered to subpoena witnesses or documents for the hearing to the extent permitted by applicable law, upon his or her own initiative or the request of a Party.
Unless the Arbitrator directs otherwise, the Party requesting by subpoena the production of any witness or documents shall bear the costs of such production.

**(i) Order of Presentation**

The Arbitrator shall determine the order of presentation of evidence at the hearing.

**(j) Applicable Law and Burden of Persuasion**

The principles of applicable substantive common, decisional and statutory law shall control the disposition of each Dispute.

Each Party bears the burden of persuasion on any claim or counterclaim raised by that Party in accordance with the principles of applicable common, decisional and statutory law.

**(k) Evidence and Argument**

The Arbitrator shall afford each Party a full and fair opportunity to present any proof relevant and material to the Dispute, to call and cross-examine witnesses and to present its argument. The Parties shall produce such evidence as the Arbitrator deems necessary to an understanding and determination of the Dispute.

The Arbitrator shall not be bound by formal rules governing the admissibility of evidence with the exception of applicable law with respect to attorney-client privilege, work product and compromise and offers to compromise. The Arbitrator shall be the judge of the relevancy, materiality and admissibility of the evidence offered, and the Arbitrator's decision on any question of evidence or argument shall be final and binding. All testimony shall be under oath or affirmation.

**(l) Confidentiality**

All aspects of the arbitration, including without limitation, the record of the proceeding, are confidential and shall not be open to the public, except (a) to the extent both Parties agree otherwise in writing, (b) as may be appropriate in any subsequent proceedings between the Parties, or (c) as may otherwise be appropriate in response to a governmental agency or legal process, provided that the Party upon whom such process is served shall give immediate notice of such process to the other Party and afford the other Party an appropriate opportunity to object to such process.

At the request of a Party or upon his or her initiative, the Arbitrator shall issue protective orders appropriate to the circumstances and shall enforce the confidentiality of the arbitration as set forth in this article.

**(m) Expenses**

Unless precluded by decisional or other law in the jurisdiction where venue lies for the Arbitration, the Employee shall bear a portion of the reasonable expenses of the arbitration up to the lesser of (a) one-half of these expenses, or (b) an amount equal to two (2) days of the Employee's gross annual cash compensation (including bonuses, commissions and related cash compensation) during the twelve (12) months immediately preceding the notice of claim initiating the Employment Dispute Arbitration Procedure. The Company shall bear the remainder of these expenses.

Unless precluded by decisional or other law in the jurisdiction where venue lies for the Arbitration, the Arbitrator's rate of compensation shall be determined at the time of appointment and shall apply to all time spent in connection with the proceeding.

**(n) Record of Proceeding**

A record of the hearing may be made by audio or video taping or by verbatim transcription. If the Company elects not to make that record, the Employee may have it made at his own expense. Any such record shall be made available to all Parties and the Arbitrator.

The Arbitrator shall be responsible, in cooperation with the Parties, for assembling the record of the proceeding and shall maintain possession of that record for at least one (1) year after issuing the Award, unless the Parties, with the Arbitrator's consent, agree otherwise.

**(o) Damages and Relief**

The Arbitrator shall have the authority to decide at any stage in the arbitration, at a party's request, to dismiss a claim or counterclaim, in whole or in part. Upon a finding that a Party has sustained his or her burden of persuasion, the Arbitrator shall have the same power and authority as would a judge in a non-jury court trial to

grant any relief that a court could grant, as may be in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction.

Both Parties have a duty to mitigate their damages by all reasonable means. The Arbitrator shall take into account in granting relief the extent of a Party's mitigation or a Party's failure to mitigate.
The Award of any damages or relief is left to the discretion of the Arbitrator, in accordance with applicable law, and may be made in a bifurcated proceeding.

**(p) Sanctions**

The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or proof, upon a finding that the claim or counterclaim was frivolous or brought to harass the Employee, the Company or the Company's personnel.

The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or proof, upon a finding that the other Party (a) engaged in unreasonable delay, (b) failed to cooperate in discovery, or (c) failed to comply with requirements of confidentiality.

**(q) The Award**

The Arbitrator shall render his or her decision and award (collectively the "Award") based solely on the evidence presented, the applicable law and the provisions of the Employment Dispute Arbitration Procedure as interpreted by the Arbitrator.

The Arbitrator is expected to issue his or her Award within thirty (30) days after the date set for the final submissions of the Parties. The Award shall be in writing and signed and dated by the Arbitrator and shall contain express findings of fact (including findings on each issue of act raised by a Party), the rationale for any grant of monetary damages or relief and, if necessary to dispose of any issues of law, conclusions of law, discussions of legal authorities and the application of the law to the facts. The Arbitrator shall give signed duplicate original copies of the Award to both Parties.

The Award may be entered as a judgment in any court of competent jurisdiction.

Unless applicable law provides otherwise, the Award shall be final and binding and not subject to review or appeal.

**(r) Arbitration Statute**

Any proceeding pursuant to the Employment Dispute Arbitration Procedure is deemed to be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§1-16, if applicable, to the exclusion of any state law inconsistent therewith; or, if the FAA is not applicable, to the law of the state of venue.

The Arbitrator shall have all powers generally granted to arbitrators, except as modified by or otherwise expressly provided in this Employment Dispute Arbitration Procedure. The Arbitrator's Award shall be enforceable as would an arbitrator's award pursuant to the applicable statute.

If any part of the Employment Dispute Arbitration Procedure is in conflict with any mandatory requirement of applicable law, the statute shall govern, and that part shall be reformed and construed to the maximum extent possible in conformance with the applicable law. The Employment Dispute Arbitration Procedure shall remain otherwise unaffected and enforceable.

The Award may be vacated or modified only on the grounds specified by the applicable statute.

**(s) Court and Administrative Proceedings**

Nothing in the Employment Dispute Arbitration Procedure shall prevent a Party from pursuing a statutory right that is expressly preserved by law or from bringing a proceeding pursuant to the applicable statute to vacate or enforce an Award or to compel arbitration or seek temporary equitable relief in aid of arbitration.

**(t) Revision of Employment Dispute Arbitration Procedure**

The Parties to a Dispute for which the Employment Dispute Arbitration Procedure has been initiated may agree in writing to vary the Employment Dispute Arbitration Procedure at any time before the Arbitrator gives copies of the Award to both Parties.

**(u) Effectuation of Purpose**

The Employment Dispute Arbitration Procedure shall be broadly interpreted and applied so as to effectuate its purpose and spirit

# EXHIBIT D

(5) 23124

# INCENTIVE BONUS AGREEMENT

This Incentive Bonus Agreement ("Agreement") is made by and between C.H. ROBINSON WORLDWIDE, INC., or one of its subsidiary or affiliated companies ("Company"), and Lorrie Ann Poublon ("You" or "Your"). In consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree as follows:

1. Terms.
Except as otherwise set forth below, the terms of this Agreement shall be effective from 1/1/2009 through the end of the year, so long as You satisfactorily perform all of the duties of Your position. This includes Your ongoing compliance with all of the terms and conditions contained in any agreement(s) previously executed by you with the Company, the Company's Code of Conduct, and all other applicable rules, policies, laws, and/or regulation related to Your employment. If You move into a different position during the current year, this Agreement may be modified or replaced. No bonus or bonus advance is considered earned by you or payable by Company if Your employment with the Company ends prior to December 31 of the current calendar year. However, in the event of Your death, Your beneficiary shall be paid the amount of salary and bonus accrued through the end of the month of Your death.

2. Salary.
You shall be paid a monthly salary of $ 3,666.67 as compensation for Your services. This will be paid semi-monthly.

3. Bonus.
You shall be eligible for a bonus based upon annual financial performance measures. The amount of the bonus will be determined according to the Incentive Bonus Agreement Detail attached hereto. The bonus is earned on December 31 of the current calendar year, and is paid on or before the February 15 pay date of the following year.

You shall be eligible for an objective bonus. The bonus is earned at year-end, December 31, and is paid on or before the February 15 pay date of the following year.

4. Financial Performance Bonus Advances.
Beginning the first payday after the Effective Date, You will be paid a monthly advance on the financial performance bonus, in the amount of $ 916.67. The Company may, however, cease payments of bonus advances if at any time during the current calendar year the Company determines that the projected financial performance of your assigned Financial Measures will be less than the amount required for You to earn the bonus already advanced, or to be advanced. Monthly bonus advances do not constitute salary, but are ordinary income for taxation purposes and will have all applicable federal, state and local taxes and other customary deductions from gross income deducted.

5. Termination.
Employment with the Company is "at-will." This means that You can terminate Your employment at any time. It also means that the Company can terminate Your employment, at any time, with or without notice or cause.

6. Miscellaneous.
This Agreement supersedes all previous Incentive Bonus Agreements or similar agreements entered into between you and the Company, which are hereby void.

7. Dispute Resolution.
You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company Intranet; (2) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of the Federal Rules of Civil Procedure; and (3) except as mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis. In the case of any conflict between the rules and procedures for either mediation or arbitration, the priority and order of precedence shall be as follows: (1) the rules and procedures stated herein; (2) the Company's Employment Dispute Mediation/Arbitration Procedure; (3) the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

For purposes of this Agreement, "Claims" shall include, but not limited to, all claims directly or indirectly related to Your recruitment, employment, compensation or benefits (except claims under an employee benefit or pension plan that specifies a claim procedure that culminates in an arbitration procedure different than this one or that is underwritten by a commercial insurer which decides claims) or termination of employment by the Company, including, but not limited to, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws or regulations (including all such laws and regulations pertaining to employment or prohibiting discrimination). This Dispute Resolution Agreement shall not apply to any of the following: (1) Worker's Compensation claims; (2) claims related to unemployment insurance; and (3) any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

This dispute resolution provision shall continue in full force and effect during Your entire employment with the Company and after Your employment has terminated, regardless of the reason for such termination and whether termination was voluntary or involuntary. This dispute resolution provision shall be binding upon the heirs, successors, and assigns of You and the Company, and any person or entity asserting Claims or seeking relief of any kind on behalf of You or the Company shall be bound by this Agreement to the fullest extent permitted by law.

If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and this Agreement may be modified to the extent necessary, consistent with its fundamental purpose and intent, in order to make it enforceable.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. HOWEVER, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY BONUS PAYMENTS OR ADVANCES UNTIL THIS AGREEMENT IS SIGNED AND RETURNED BY YOU. PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT, AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

The Effective Date of this Agreement is Thursday, January 01, 2009.

I understand and acknowledge that this Agreement and the benefits made available to me under this Agreement is part of the compensation and consideration available to me in return for the dispute resolution provision it contains and also the other various agreements I previously have entered into with Company, which agreements may include, but are not limited to, Sales-Employee Agreement, Management-Employee Agreement, Confidentiality and Noncompetition Agreement, and Data Security Agreement. I reaffirm and agree to abide by all my prior agreements with Company as a necessary condition of receiving the benefits under this Agreement.

| | | | |
|---|---|---|---|
| [signature] | 12/15/08 | [signature] | 12/15/08 |
| Lorrie Ann Poublon 23124 | Date | Matthew Castle | Date |

# Poublon,Lorrie Ann
# 2009 Incentive Bonus Agreement Detail

C.H. ROBINSON WORLDWIDE, INC.

Poublon,Lorrie Ann
Target Total Compensation *

| | Earned 2007 | Planned At Goal 2009 | Projected 2008 | At Flat 2009 | At Goal 2009 |
|---|---|---|---|---|---|
| **Annualized Salary** | $ 50,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 |
| **Team Based Compensation** | | | | | |
| Gross Net Bonus | $ 0.00 | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 14,000.00 |
| **Individualized Compensation** | | | | | |
| Objective Bonus | $ 2,500.00 | $ 4,500.00 | $ 0.00 | $ 3,000.00 | $ 3,000.00 |
| December | $ 0.00 | $ 0.00 | $ 3,000.00 | $ 0.00 | $ 0.00 |
| **Total Cash** | **$ 52,500.00** | **$ 59,500.00** | **$ 58,000.00** | **$ 58,000.00** | **$ 61,000.00** |
| **Wealth Accumulation** | | | | | |
| Proj. 401k Plan Match | $ 677.20 | $ 2,380.00 | $ 2,346.19 | $ 2,320.00 | $ 2,440.00 |
| Est. Profit Sharing | $ 0.00 | $ 1,190.00 | $ 1,160.00 | $ 2,320.00 | $ 2,440.00 |
| | $ 677.20 | $ 3,570.00 | $ 3,506.19 | $ 4,640.00 | $ 4,880.00 |
| **Health and Welfare** | | | | | |
| Medical | $ 0.00 | $ 8,520.00 | $ 8,520.00 | $ 9,456.00 | $ 9,456.00 |
| Dental | $ 92.40 | $ 77.28 | $ 77.28 | $ 77.28 | $ 77.28 |
| LTD | $ 47.56 | $ 75.00 | $ 75.12 | $ 75.00 | $ 75.00 |
| Life | $ 18.56 | $ 37.29 | $ 38.28 | $ 38.28 | $ 40.26 |
| | $ 158.52 | $ 8,709.57 | $ 8,710.68 | $ 9,646.56 | $ 9,648.54 |
| **Total Compensation *** | **$ 53,535.72** | **$ 71,779.57** | **$ 70,216.87** | **$ 72,286.56** | **$ 75,528.54** |
| **Payroll** | | | | | |
| Annualized Salary | $ 50,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 |
| Advance | $ 0.00 | $ 7,250.00 | $ 7,249.92 | $ 11,000.00 | $ 11,000.00 |
| Total | $ 50,000.00 | $ 51,250.00 | $ 51,249.92 | $ 55,000.00 | $ 55,000.00 |
| Per Pay Period Total | $ 2,083.33 | $ 2,135.42 | $ 2,135.41 | $ 2,291.67 | $ 2,291.67 |

2009 401k Contribution: 4%
2009 Company 401k Match: 4%
Max 401k Match: 4%
Match Loss: 0%

Est. Profit Sharing Contribution: 4%
Eligibility Date for Profit Sharing: 7/1/2008

Employee ID: 23124
Branch: 0638, Los Angeles International
Most Recent Hire Date: 5/7/2007

Lorrie Poublon
C.H. Robinson Worldwide, Inc.



* All amounts shown are estimates and exclude equity.
Printed: 12/15/2008 11:52:46 AM

EXHIBIT D PAGE 83

CH-POU0000013

* For each decrease of $ 100,000.00 below $ 76,717.56, bonus decreases by $ 0.00

**Poublon,Lorrie Ann**
**Financials - GN Revenue - LA INT HIROES Rollup**

| | 2 | FLAT | 4 | 5 | 6 | GOAL | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| GN Revenue | $ 76,717.56 | $ 250,000.00 | $ 423,282.44 | $ 596,564.88 | $ 769,847.32 | $ 943,129.76 | $ 1,116,412.20 | $ 1,289,694.64 |
| GN Growth %ages | -69.31% | 0.00% | 69.31% | 138.63% | 207.94% | 277.25% | 346.56% | 415.88% |
| Planned GN Bonus | $ 11,000.00 | $ 11,000.00 | $ 11,750.00 | $ 12,500.00 | $ 13,250.00 | $ 14,000.00 | $ 14,500.00 | $ 15,000.00 |
| Planned FIN Bonus % Change | 0.00% | 0.00% | 6.82% | 13.64% | 20.45% | 27.27% | 31.82% | 36.36% |

* For each increase of $ 100,000.00 above $ 1,289,694.64, bonus increases by $ 500.00

**Poublon,Lorrie Ann**
**Planned Total Cash +**

| | 2 | FLAT | 4 | 5 | 6 | GOAL | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Planned Total Cash | $ 58,000.00 | $ 58,000.00 | $ 58,750.00 | $ 59,500.00 | $ 60,250.00 | $ 61,000.00 | $ 61,500.00 | $ 62,000.00 |
| Total Cash % Change | 0.00% | 0.00% | 1.29% | 2.59% | 3.88% | 5.17% | 6.03% | 6.90% |

**Historical Financial Information**

| YEAR | MEASURE POINT | MEASURE TYPE | FINANCIALS | % CHG FROM PRIOR YEAR |
|---|---|---|---|---|
| 2008 | 06384 | GN_REVENUE | $ 250,000.00 | 668.46% |
| 2007 | 06384 | GN_REVENUE | $ 32,531.54 | 103.80% |
| 2006 | 06384 | GN_REVENUE | $ -856,489.92 | |

* Growth: For each increase of $ 100,000.00 in Gross Net Revenue growth beyond $ 1,289,694.64, you will earn an additional $ 500.00.
Down: For each decrease of $ 100,000.00 in Gross Net Revenue below $ 76,717.56, your bonus opportunity will decrease by $ 0.00. At no time will bonuses decrease below zero amount.

For final Gross Net Revenue results which fall between those displayed, bonus amount will be prorated between the two Gross Net Revenue measures. Amounts are not cumulative.

+ Planned Total Cash is the sum of base salary, financial bonus, objective bonus, and commissions. Objective and Commission at Min/Flat are reflected up to and included in Bracket 6. Objective and Commission at Max/Goal are included at the Goal Bracket and above.

**Poublon,Lorrie Ann**
**Individual Objectives Summary**

| | Weighting | Comment |
|---|---|---|
| Objective 1 | 100% | 5% sales commision to be paid on the following accounts - total net revenue less credit and finance. C2955473 – Broco C1962223 – Schwarzkopf C3369032 – Ana Belle Farms LA Spa's to be included should we secure international opportunties. |



EXHIBIT D PAGE 85

## 2009 Total Cash at Goal




## 2009 Total Compensation* at Goal






* All amounts shown are estimates and exclude equity.
Printed: 12/15/2008 11:52:48 AM

# EXHIBIT E

# INCENTIVE BONUS AGREEMENT

23124

This Incentive Bonus Agreement ("Agreement") is made by and between C.H. ROBINSON WORLDWIDE, INC., or one of its subsidiary or affiliated companies ("Company"), and Lorrie Ann Poublon ("You" or "Your"). In consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree as follows:

**1. Terms.**
Except as otherwise set forth below, the terms of this Agreement shall be effective from 1/1/2010 through the end of the year, so long as You satisfactorily perform all of the duties of Your position. This includes Your ongoing compliance with all of the terms and conditions contained in any agreement(s) previously executed by you with the Company, the Company's Code of Conduct, and all other applicable rules, policies, laws, and/or regulation related to Your employment. If You move into a different position during the current year, this Agreement may be modified or replaced. No bonus or bonus advance is considered earned by you or payable by Company if Your employment with the Company ends prior to December 31 of the current calendar year. However, in the event of Your death, Your beneficiary shall be paid the amount of salary and bonus accrued through the end of the month of Your death.

**2. Salary.**
You shall be paid a monthly salary of $ 3,666.67 as compensation for Your services. This will be paid semi-monthly.

**3. Bonus.**
You shall be eligible for a bonus based upon annual financial performance measures. The amount of the bonus will be determined according to the Incentive Bonus Agreement Detail attached hereto. The bonus is earned on December 31 of the current calendar year, and is paid on or before the February 15 pay date of the following year.

You shall be eligible for an objective bonus. The bonus is earned at year-end, December 31, and is paid on or before the February 15 pay date of the following year.

**4. Financial Performance Bonus Advances.**
Beginning the first payday after the Effective Date, You will be paid a monthly advance on the financial performance bonus, in the amount of $ 916.67. The Company may, however, reduce the amount of bonus advances if at any time during the current calendar year the Company determines that the projected financial performance of your assigned Financial Measures will be less than the amount required for You to earn the bonus already advanced, or to be advanced. Monthly bonus advances do not constitute salary, but are ordinary income for taxation purposes and will have all applicable federal, state and local taxes and other customary deductions from gross income deducted.

**5. Termination.**
Employment with the Company is "at-will." This means that You can terminate Your employment at any time. It also means that the Company can terminate Your employment, at any time, with or without notice or cause.

**6. Miscellaneous.**
This Agreement supersedes all previous Incentive Bonus Agreements or similar agreements entered into between you and the Company, which are hereby void.

**7. Dispute Resolution.**
You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company Intranet; (2) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of the Federal Rules of Civil Procedure; and (3) except as mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis. In the case of any conflict between the rules and procedures for either mediation or arbitration, the priority and order of precedence shall be as follows: (1) the rules and procedures stated herein; (2) the Company's Employment Dispute Mediation/Arbitration Procedure; (3) the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

For purposes of this Agreement, "Claims" shall include, but not limited to, all claims directly or indirectly related to Your recruitment, employment, compensation or benefits (except claims under an employee benefit or pension plan that specifies a claim procedure that culminates in an arbitration procedure different than this one or that is underwritten by a commercial insurer which decides claims) or termination of employment by the Company, including, but not limited to, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws or regulations (including all such laws and regulations pertaining to employment or prohibiting discrimination). This Dispute Resolution Agreement shall not apply to any of the following: (1) Worker's Compensation claims; (2) claims related to unemployment insurance; and (3) any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

This dispute resolution provision shall continue in full force and effect during Your entire employment with the Company and after Your employment has terminated, regardless of the reason for such termination and whether termination was voluntary or involuntary. This dispute resolution provision shall be binding upon the heirs, successors, and assigns of You and the Company, and any person or entity asserting Claims or seeking relief of any kind on behalf of You or the Company shall be bound by this Agreement to the fullest extent permitted by law.

If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and this Agreement may be modified to the extent necessary, consistent with its fundamental purpose and intent, in order to make it enforceable.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. HOWEVER, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY BONUS PAYMENTS OR ADVANCES UNTIL THIS AGREEMENT IS SIGNED AND RETURNED BY YOU. PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT, AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

The Effective Date of this Agreement is Friday, January 01, 2010.

I understand and acknowledge that this Agreement and the benefits made available to me under this Agreement is part of the compensation and consideration available to me in return for the dispute resolution provision it contains and also the other various agreements I previously have entered into with Company, which agreements may include, but are not limited to, Sales-Employee Agreement, Management-Employee Agreement, Confidentiality and Noncompetition Agreement, and Data Security Agreement. I reaffirm and agree anew to abide by all my prior agreements with Company as a necessary condition of receiving the benefits under this Agreement.

| | | | |
|---|---|---|---|
| [signature] | 12/23/09 | [signature] | 12/29/09 |
| Lorrie Ann Poublon, 23124 | Date | Sarah Gibson | Date |



EXHIBIT E PAGE 87

CH-POU0000017

# Poublon,Lorrie Ann
# 2010 Compensation Summary

C.H. ROBINSON WORLDWIDE, INC.

Poublon,Lorrie Ann
Target Total Compensation *

| | Earned 2008 | Planned At Goal 2009 #934K | Projected 2009 | #255K → Planned At 3^ (Flat) 2010 | Planned At 7 (Goal) 2010 #615K |
|---|---|---|---|---|---|
| **Annualized Salary** | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 |
| **Team Based Compensation** | | | | | |
| Financial Bonus | $ 11,213.66 | $ 14,000.00 | $ 11,021.64 * | $ 13,000.00 | $ 18,000.00 |
| **Individualized Compensation** | | | | | |
| Objective Bonus | $ 0.00 | $ 3,000.00 | $ 1,959.50 | $ 0.00 | $ 5,000.00 |
| December | $ 3,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Total Cash** | $ 58,213.66 | $ 61,000.00 | $ 56,981.14 | $ 57,000.00 | $ 67,000.00 |
| **Wealth Accumulation** | | | | | |
| Proj. 401k Plan Match | $ 2,226.19 | $ 2,440.00 | $ 2,437.01 | $ 2,280.00 | $ 2,680.00 |
| Est. Profit Sharing | $ 1,145.00 | $ 2,440.00 | $ 2,279.25 | $ 2,280.00 | $ 2,680.00 |
| | $ 3,371.19 | $ 4,880.00 | $ 4,716.26 | $ 4,560.00 | $ 5,360.00 |
| **Health and Welfare** | | | | | |
| Medical | $ 8,520.00 | $ 9,456.00 | $ 9,456.00 | $ 9,552.00 | $ 9,552.00 |
| Dental | $ 77.28 | $ 77.28 | $ 77.28 | $ 84.00 | $ 84.00 |
| LTD | $ 75.12 | $ 75.00 | $ 75.12 | $ 75.00 | $ 75.00 |
| Life | $ 32.64 | $ 38.28 | $ 37.61 | $ 37.62 | $ 44.22 |
| | $ 8,705.04 | $ 9,646.56 | $ 9,646.01 | $ 9,748.62 | $ 9,755.22 |
| **Total Compensation *** | $ 70,289.89 | $ 75,526.56 | $ 71,343.40 | $ 71,308.62 | $ 82,115.22 |

| Payroll | Year-End 2008 | Planned 2009 | Projected 2009 | Current 2009 | Planned 2010 |
|---|---|---|---|---|---|
| Annualized Salary | $ 44,000.00 | $ 44,000.00 | | $ 44,000.00 | $ 44,000.00 |
| Advance | $ 7,249.92 | $ 11,000.00 * | $ 10,999.92 | $ 10,999.92 | $ 11,000.00 |
| Total | $ 51,249.92 | $ 55,000.00 | | $ 54,999.92 | $ 55,000.00 |
| Per Pay Period Total | $ 2,135.41 | $ 2,291.67 | | $ 2,291.66 * | $ 2,291.67 * |

2010 401k Contribution: 4%
2010 Company 401k Match: 4%
Max 401k Match: 4%
Match Loss: 0%

Est. Profit Sharing Contribution: 4%
Eligibility Date for Profit Sharing: 7/1/2008

Employee ID: 23124
Branch: 0638, Los Angeles International
Most Recent Hire Date: 5/7/2007

^ Planning based on the projected 2009 year-end finish

Lorrie Poublon
C.H. Robinson Worldwide, Inc.



* All amounts shown are estimates and exclude equity.
Printed: 12/21/2009 10:13:14 AM

**Poublon,Lorrie Ann**
**Financials - GN Revenue - LOS ANGELES INTERNATIONAL Rollup**

* For each decrease of $ 100,000.00 below $ 165,000.00, bonus decreases by $ 0.00

| | 2 | 3^ | 4 | 5 | 6 | 7 (GOAL) | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| GN Revenue | $ 165,000.00 | $ 259,000.00 | $ 345,000.00 | $ 435,000.00 | $ 525,000.00 | $ 615,000.00 | $ 705,000.00 | $ 795,000.00 |
| GN Growth %ages | -35.29% | 0.00% | 35.29% | 70.59% | 105.88% | 141.18% | 176.47% | 211.76% |
| Planned GN Bonus | $ 11,750.00 | $ 13,000.00 | $ 14,250.00 | $ 15,500.00 | $ 16,750.00 | $ 18,000.00 | $ 18,000.00 | $ 18,000.00 |
| Planned FIN Bonus % Change | 6.61% | 17.85% | 29.29% | 40.63% | 51.97% | 63.32% | 63.32% | 63.32% |

* For each increase of $ 100,000.00 above $ 795,000.00, bonus increases by $ 750.00

**Poublon,Lorrie Ann**
**Planned Total Cash +**

| | 2 | 3^ | 4 | 5 | 6 | 7 (GOAL) | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Planned Total Cash | $ 55,750.00 | $ 57,000.00 | $ 58,250.00 | $ 59,500.00 | $ 60,750.00 | $ 67,000.00 | $ 67,000.00 | $ 67,000.00 |
| Total Cash % Change | -2.16% | 0.03% | 2.23% | 4.42% | 6.61% | 17.58% | 17.58% | 17.58% |

**Historical Financial Information**

| YEAR | MEASURE POINT DESCR | MEASURE TYPE | FINANCIALS | % CHG FROM PRIOR YEAR |
|---|---|---|---|---|
| 2009 | LOS ANGELES INTERNATIONAL Rollup | GN_REVENUE | $ 255,000.00 | -6.03% |
| 2008 | LOS ANGELES INTERNATIONAL Rollup | GN_REVENUE | $ 271,366.30 | 734.16% |
| 2007 | LOS ANGELES INTERNATIONAL Rollup | GN_REVENUE | $ 32,531.54 | |

* Growth: For each Increase of $ 100,000.00 in Gross Net Revenue growth beyond $ 795,000.00, you will earn an additional $ 750.00. Down: For each decrease of $ 100,000.00 in Gross Net Revenue below $ 165,000.00, your bonus opportunity will decrease by $ 0.00. At no time will bonuses decrease below zero amount. For final Gross Net Revenue results which fall between those displayed, bonus amount will be prorated between the two Gross Net Revenue measures. Amounts are not cumulative.

+ Planned Total Cash is the sum of base salary, financial bonus, objective bonus, and commissions. Objective and Commission at 3(Flat) are reflected up to and included in Bracket 6. Objective and Commission at 7(Goal) are included at the Goal Bracket and above.

^ Planning based on the projected 2009 year-end finish

**Poublon,Lorrie Ann**
**Individual Objectives Summary**

| | Weighting | Comment |
|---|---|---|
| Objective 1 | 100% | Commission to be paid on the following existing accounts at 5% of total Branch Revenue Schwarzkopf Shorewood Broco Ana Belle Farms Any new business gained by Lorrie's sales efforts will also be commissionable at 5% of total Branch Net Revenue. |



EXHIBIT E PAGE 90

## *2010 Total Cash at Goal*




## *2010 Total Compensation* at Goal*






* All amounts shown are estimates and exclude equity.
Printed: 12/21/2009 10:13:14 AM

# EXHIBIT F

23124

(5)

# INCENTIVE BONUS AGREEMENT

This Incentive Bonus Agreement ("Agreement") is made by and between C.H. ROBINSON WORLDWIDE, INC., or one of its subsidiary or affiliated companies ("Company"), and Lorrie Ann Poublon ("You" or "Your"). In consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree as follows:

1. Terms.
Except as otherwise set forth below, the terms of this Agreement shall be effective from 1/1/2011 through the end of the year, so long as You satisfactorily perform all of the duties of Your position. This includes Your ongoing compliance with all of the terms and conditions contained in any agreement(s) previously executed by you with the Company, the Company's Code of Conduct, and all other applicable rules, policies, laws, and/or regulation related to Your employment. If You move into a different position during the current year, this Agreement may be modified or replaced. No bonus or bonus advance is considered earned by you or payable by Company if Your employment with the Company ends prior to December 31 of the current calendar year. However, in the event of Your death, Your beneficiary shall be paid the amount of salary and bonus accrued through the end of the month of Your death.

2. Salary.
You shall be paid a monthly salary of $ 3,666.67 as compensation for Your services. This will be paid semi-monthly.

3. Bonus.
You shall be eligible for a bonus based upon either annual financial performance measures and/or individual objectives. The amount of the bonus will be determined according to the Incentive Bonus Agreement Detail attached hereto. The bonus is earned on December 31 of the current calendar year, and is paid on or before the February 15 pay date of the following year.

4. Financial Performance Bonus Advances.
Beginning the first payday after the Effective Date, You will be paid a monthly advance on the financial performance bonus, in the amount of $ 916.67. The Company may, however, reduce the amount of bonus advances if at any time during the current calendar year the Company determines that the projected financial performance of your assigned Financial Measures will be less than the amount required for You to earn the bonus already advanced, or to be advanced. Monthly bonus advances do not constitute salary, but are ordinary income for taxation purposes and will have all applicable federal, state and local taxes and other customary deductions from gross income deducted.

5. Termination.
Employment with the Company is "at-will." This means that You can terminate Your employment at any time. It also means that the Company can terminate Your employment, at any time, with or without notice or cause.

6. Miscellaneous.
This Agreement supersedes all previous Incentive Bonus Agreements or similar agreements entered into between you and the Company, which are hereby void.

7. Dispute Resolution.
You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company Intranet; (2) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of the Federal Rules of Civil Procedure; and (3) except as mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis. In the case of any conflict between the rules and procedures for either mediation or arbitration, the priority and order of precedence shall be as follows: (1) the rules and procedures stated herein; (2) the Company's Employment Dispute Mediation/Arbitration Procedure; (3) the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

For purposes of this Agreement, "Claims" shall include, but not limited to, all claims directly or indirectly related to Your recruitment, employment, compensation or benefits (except claims under an employee benefit or pension plan that specifies a claim procedure that culminates in an arbitration procedure different than this one or that is underwritten by a commercial insurer which decides claims) or termination of employment by the Company, including, but not limited to, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws or regulations (including all such laws and regulations pertaining to employment or prohibiting discrimination). This Dispute Resolution Agreement shall not apply to any of the following: (1) Worker's Compensation claims; (2) claims related to unemployment insurance; and (3) any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

This dispute resolution provision shall continue in full force and effect during Your entire employment with the Company and after Your employment has terminated, regardless of the reason for such termination and whether termination was voluntary or involuntary. This dispute resolution provision shall be binding upon the heirs, successors, and assigns of You and the Company, and any person or entity asserting Claims or seeking relief of any kind on behalf of You or the Company shall be bound by this Agreement to the fullest extent permitted by law.

If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and this Agreement may be modified to the extent necessary, consistent with its fundamental purpose and intent, in order to make it enforceable.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. HOWEVER, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY BONUS PAYMENTS OR ADVANCES UNTIL THIS AGREEMENT IS SIGNED AND RETURNED BY YOU. PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT, AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

The Effective Date of this Agreement is Saturday, January 01, 2011.

I understand and acknowledge that this Agreement and the benefits made available to me under this Agreement is part of the compensation and consideration available to me in return for the dispute resolution provision it contains and also the other various agreements I previously have entered into with Company, which agreements may include, but are not limited to, Sales-Employee Agreement, Management-Employee Agreement, Confidentiality and Noncompetition Agreement, and Data Security Agreement. I reaffirm and agree anew to abide by all my prior agreements with Company as a necessary condition of receiving the benefits under this Agreement.

| | | | |
|---|---|---|---|
| [signature] | 12/22/10 | [signature: Sarah Gibson] | 12/22/10 |
| Lorrie Ann Poublon, 23124 | Date | Sarah Gibson | Date |

# Poublon,Lorrie Ann
# 2011 Compensation Summary

C.H. ROBINSON WORLDWIDE, INC.

Poublon,Lorrie Ann
Target Total Compensation *

| | Earned 2009 | Planned At Flat 2010 | Planned At Goal 2010 | Projected 2010 | Planned At 3^ (Flat) 2011 | Planned At 7 (Goal) 2011 |
|---|---|---|---|---|---|---|
| **Annualized Salary** | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 |
| **Team Based Compensation** | | | | | | |
| Financial Bonus | $ 11,395.96 | $ 13,000.00 | $ 18,000.00 | $ 12,375.00 | $ 13,000.00 | $ 17,000.00 |
| **Individualized Compensation** | | | | | | |
| Objective Bonus | $ 2,472.16 | $ 0.00 | $ 5,000.00 | $ 3,667.70 | $ 5,000.00 | $ 5,000.00 |
| **Total Cash** | $ 57,868.12 | $ 57,000.00 | $ 67,000.00 | $ 60,042.70 | $ 62,000.00 | $ 66,000.00 |
| **Other Bonuses** | | | | | | |
| Growth Pool | $ 1,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Wealth Accumulation** | | | | | | |
| Proj. 401k Plan Match | $ 2,437.01 | $ 2,280.00 | $ 2,680.00 | $ 2,582.93 | $ 2,480.00 | $ 2,640.00 |
| Est. Profit Sharing | $ 2,436.92 | $ 2,280.00 | $ 2,680.00 | $ 2,401.71 | $ 2,480.00 | $ 2,640.00 |
| | $ 4,873.93 | $ 4,560.00 | $ 5,360.00 | $ 4,984.64 | $ 4,960.00 | $ 5,280.00 |
| **Health and Welfare** | | | | | | |
| Medical | $ 9,456.00 | $ 9,552.00 | $ 9,552.00 | $ 9,552.00 | $ 10,010.52 | $ 10,010.52 |
| Dental | $ 77.28 | $ 84.00 | $ 84.00 | $ 84.00 | $ 84.60 | $ 84.60 |
| LTD | $ 75.12 | $ 75.00 | $ 75.00 | $ 75.12 | $ 41.70 | $ 41.70 |
| Life | $ 36.60 | $ 37.62 | $ 37.62 | $ 39.63 | $ 22.32 | $ 23.76 |
| | $ 9,645.00 | $ 9,748.62 | $ 9,748.62 | $ 9,750.75 | $ 10,159.14 | $ 10,160.58 |
| **Total Compensation *** | $ 73,387.05 | $ 71,308.62 | $ 82,108.62 | $ 74,778.09 | $ 77,119.14 | $ 81,440.58 |

| Payroll | Year-End 2009 | Planned 2010 | Projected 2010 | Current 2010 | Planned 2011 |
|---|---|---|---|---|---|
| Annualized Salary | $ 44,000.00 | $ 44,000.00 | | $ 44,000.00 | $ 44,000.00 |
| Advance | $ 10,999.92 | $ 11,000.00 | $ 10,999.92 | $ 10,999.92 | $ 11,000.00 |
| Total | $ 54,999.92 | $ 55,000.00 | | $ 54,999.92 | $ 55,000.00 |
| Per Pay Period Total | $ 2,291.66 | $ 2,291.67 | | $ 2,291.66 | $ 2,291.67 |

2011 401k Contribution: 4%
2011 Company 401k Match: 4%
Max 401k Match: 4%
Match Loss: 0%

Est. Profit Sharing Contribution: 4%
Eligibility Date for Profit Sharing: 7/1/2008

Employee ID: 23124
Branch: 0638, Los Angeles Global Forwarding
Most Recent Hire Date: 5/7/2007

^ Planning based on the projected 2010 year-end finish

**Poublon,Lorrie Ann**
**Financials - GN Revenue - LOS ANGELES GF Rollup**

| | 2 | 3^ | 4 | 5 | 6 | 7 (GOAL) | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| GN Revenue | $ 87,500.01 | $ 210,000.00 | $ 332,499.99 | $ 455,000.01 | $ 577,500.01 | $ 700,000.00 | $ 850,000.00 | $ 1,000,000.00 |
| GN Growth %ages | -58.33% | 0.00% | 58.33% | 116.67% | 175.00% | 233.33% | 304.76% | 376.19% |
| Planned GN Bonus | $ 12,000.00 | $ 13,000.00 | $ 14,000.00 | $ 15,000.00 | $ 16,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 |
| Planned FIN Bonus % Change | -3.03% | 5.05% | 13.13% | 21.21% | 29.29% | 37.37% | 37.37% | 37.37% |

*For each decrease of $ 100,000.00 below $ 87,500.01, bonus decreases by $ 0.00

*For each increase of $ 100,000.00 above $ 1,000,000.00, bonus increases by $ 0.00

**Poublon,Lorrie Ann**
**Planned Total Cash +**

| | 2 | 3^ | 4 | 5 | 6 | 7 (GOAL) | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Planned Total Cash | $ 61,000.00 | $ 62,000.00 | $ 63,000.00 | $ 64,000.00 | $ 65,000.00 | $ 66,000.00 | $ 66,000.00 | $ 66,000.00 |
| Total Cash % Change | 1.59% | 3.26% | 4.93% | 6.59% | 8.26% | 9.92% | 9.92% | 9.92% |

**Historical Financial Information**

| YEAR | MEASURE POINT DESCR | MEASURE TYPE | FINANCIALS | % CHG FROM PRIOR YEAR |
|---|---|---|---|---|
| 2010 | LOS ANGELES GF Rollup | GN_REVENUE | $ 210,000.00 | -38.50% |
| 2009 | LOS ANGELES GF Rollup | GN_REVENUE | $ 341,483.16 | 25.84% |
| 2008 | LOS ANGELES GF Rollup | GN_REVENUE | $ 271,366.30 | |

$ 514,445

* Growth: For each increase of $ 100,000.00 in Gross Net Revenue growth beyond $ 1,000,000.00, you will earn an additional $ 0.00. Down: For each decrease of $ 100,000.00 in Gross Net Revenue below $ 87,500.01, your bonus opportunity will decrease by $ 0.00. At no time will bonuses decrease below zero amount. For final Gross Net Revenue results which fall between those displayed, bonus amount will be prorated between the two Gross Net Revenue measures. Amounts are not cumulative.

+ Planned Total Cash is the sum of base salary, financial bonus, objective bonus, and commissions. Objective and Commission at 3(Flat) are reflected up to and included in Bracket 6. Objective and Commission at 7(Goal) are included at the Goal Bracket and above.

^ Planning based on the projected 2010 year-end finish

**Poublon,Lorrie Ann**
**Individual Objectives Summary**

| | Weighting | Comment |
|---|---|---|
| Objective 1 | 100% | Lorrie will recieve 5% of Net Revenue for any new account she personally brings in or closes, along with continuing to recieve 5% on Dial/Henkel, Broco and Traffix Devices (Ocean export only) |

Air? also?

## 2011 Total Cash at Goal




## 2011 Total Compensation* at Goal



# EXHIBIT G

23124

(5)

# INCENTIVE BONUS AGREEMENT

This Incentive Bonus Agreement ("Agreement") is made by and between C.H. ROBINSON WORLDWIDE, INC., or one of its subsidiary or affiliated companies ("Company"), and Lorrie Ann Poublon ("You" or "Your"). In consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree as follows:

**1. Terms.**
Sections 5, 6, 7, and 8 of this Agreement shall be effective during and after Your employment with the Company. Sections 2, 3, and 4 of this Agreement shall be effective from 1/1/2012 through the end of the year, so long as You satisfactorily perform all of the duties of Your position. This includes Your ongoing compliance with all of the terms and conditions contained in any agreement(s) previously executed by you with the Company, the Company's Code of Conduct, and all other applicable rules, policies, laws, and/or regulation related to Your employment. If You move into a different position during the year, this Agreement may be modified or replaced. No bonus or bonus advance is considered earned by you or payable by Company if Your employment with the Company ends prior to December 31, 2012. However, in the event of Your death, Your beneficiary shall be paid the amount of salary and bonus accrued through the end of the month of Your death.

**2. Salary.**
You shall be paid a monthly salary of $ 3,666.67 as compensation for Your services. This will be paid semi-monthly.

**3. Bonus.**
You shall be eligible for a bonus based upon either annual financial performance measures and/or individual objectives. The amount of the bonus will be determined according to the Incentive Bonus Agreement Detail attached hereto. The bonus is earned on December 31, 2012, and is paid on or before the February 15 pay date of the following year.

**4. Financial Performance Bonus Advances.**
Beginning the first payday after the Effective Date, You will be paid a monthly advance on the financial performance bonus, in the amount of $ 791.67. The Company may, however, reduce the amount of bonus advances if at any time during the calendar year the Company determines that the projected financial performance of your assigned Financial Measures will be less than the amount required for You to earn the bonus already advanced, or to be advanced. Monthly bonus advances do not constitute salary, but are ordinary income for taxation purposes and will have all applicable federal, state and local taxes and other customary deductions from gross income deducted.

**5. Termination.**
Employment with the Company is "at-will." This means that You can terminate Your employment at any time. It also means that the Company can terminate Your employment, at any time, with or without notice or cause and/or change the terms and conditions of Your employment.

**6. Miscellaneous.**
This Agreement supersedes all previous Incentive Bonus Agreements or similar agreements entered into between you and the Company, which are hereby void.

**7. Dispute Resolution.**
You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) the arbitration need not actually be administered by the American Arbitration Association; (2) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company intranet; (3) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of the Federal Rules of Civil Procedure; (4) except on a substantial showing of good cause, discovery will be limited to the exchange of relevant documents and three depositions per side; and (5) except as mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis. In the case of any conflict between the rules and procedures for either mediation or arbitration, the priority and order of precedence shall be as follows: (1) the rules and procedures stated herein; (2) the Company's Employment Dispute Mediation/Arbitration Procedure; (3) the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

For purposes of this Agreement, "Claims" shall include, but not limited to, all claims directly or indirectly related to Your recruitment, employment, compensation or benefits (except that for any claims under an employee benefit or pension plan that specifies a claim procedure, such claim procedure must first be exhausted before a claim, if any, may be pursued under this Agreement) or termination of employment by the Company, including, but not limited to, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws or regulations (including all such laws and regulations pertaining to employment or prohibiting discrimination). This Dispute Resolution Agreement shall not apply to any of the following: (1) Worker's Compensation claims; (2) claims related to unemployment insurance; and (3) any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

This dispute resolution provision shall continue in full force and effect during Your entire employment with the Company and after Your employment has terminated, regardless of the reason for such termination and whether termination was voluntary or involuntary. This dispute resolution provision shall be binding upon the heirs, successors, and assigns of You and the Company, and any person or entity asserting Claims or seeking relief of any kind on behalf of You or the Company shall be bound by this Agreement to the fullest extent permitted by law.

If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and this Agreement may be modified to the extent necessary, consistent with its fundamental purpose and intent, in order to make it enforceable.

**8. Governing Law and Venue Selection.**
This Agreement is made under and shall be governed by and construed in accordance with the laws of the State of Minnesota without regard to the conflicts of law principles. Any dispute or claim between You and the Company not subject to the requirements contained in Paragraph 7 shall be adjudicated or arbitrated exclusively in a state or federal court in Hennepin County, Minnesota, and both You and the Company consent to jurisdiction in such court, waive any objection to such venue, whether on the basis of inconvenience or otherwise, and agree not to pursue any claim or suit in any other jurisdiction.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. HOWEVER, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY BONUS PAYMENTS OR ADVANCES UNTIL THIS AGREEMENT IS SIGNED AND RETURNED BY YOU. PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT, AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

The Effective Date of this Agreement is Sunday, January 01, 2012.

I understand and acknowledge that this Agreement and the benefits made available to me under this Agreement is part of the compensation and consideration available to me in return for the dispute resolution provision it contains and also the other various agreements I previously have entered into with Company, which agreements may include, but are not limited to, Sales-Employee Agreement, Management-Employee Agreement, Confidentiality and Noncompetition Agreement, and Data Security Agreement. I reaffirm and agree and to abide by all my prior agreements with Company as a necessary condition of receiving the benefits under this Agreement.

| | | | |
|---|---|---|---|
| Lorrie Ann Poublon, 23124 | Date 12/23/11 | Gerry Nelson | Date 12-23-11 |

# Poublon,Lorrie Ann
# 2012 Compensation Summary

C.H. ROBINSON WORLDWIDE, INC.

Poublon,Lorrie Ann
Target Total Compensation *

| | Earned 2010 | Planned At Flat 2011 | Planned At Goal 2011 | Projected 2011 | Planned At 3^ (Flat) 2012 | Planned At 7 (Goal) 2012 |
|---|---|---|---|---|---|---|
| **Annualized Salary** | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 | $ 44,000.00 |
| **Team Based Compensation** | | | | | | |
| Financial Bonus | $ 12,084.48 | $ 13,000.00 | $ 17,000.00 | $ 12,000.00 | $ 11,000.00 | $ 15,000.00 |
| **Individualized Compensation** | | | | | | |
| Objective Bonus | $ 3,812.71 | $ 5,000.00 | $ 5,000.00 | $ 957.25 | $ 7,000.00 | $ 7,000.00 |
| **Total Cash** | $ 59,897.19 | $ 62,000.00 | $ 66,000.00 | $ 56,957.25 | $ 62,000.00 | $ 66,000.00 |
| **Wealth Accumulation** | | | | | | |
| Proj. 401k Plan Match | $ 2,403.12 | $ 2,480.00 | $ 2,640.00 | $ 2,278.29 | $ 2,480.00 | $ 2,640.00 |
| Est. Profit Sharing | $ 2,403.05 | $ 2,480.00 | $ 2,640.00 | $ 2,278.29 | $ 2,480.00 | $ 2,640.00 |
| | $ 4,806.17 | $ 4,960.00 | $ 5,280.00 | $ 4,556.58 | $ 4,960.00 | $ 5,280.00 |
| **Health and Welfare** | | | | | | |
| Medical | $ 9,552.00 | $ 10,014.00 | $ 10,014.00 | $ 10,014.00 | $ 10,800.00 | $ 10,800.00 |
| Dental | $ 84.00 | $ 54.00 | $ 54.00 | $ 54.00 | $ 90.00 | $ 90.00 |
| LTD | $ 75.12 | $ 41.70 | $ 41.70 | $ 41.76 | $ 41.70 | $ 41.70 |
| Life | $ 39.12 | $ 22.32 | $ 23.76 | $ 20.50 | $ 22.32 | $ 23.76 |
| | $ 9,750.24 | $ 10,132.02 | $ 10,133.46 | $ 10,130.26 | $ 10,954.02 | $ 10,955.46 |
| **Total Compensation *** | $ 74,453.60 | $ 77,092.02 | $ 81,413.46 | $ 71,644.09 | $ 77,914.02 | $ 82,235.46 |

| **Payroll** | Year-End 2010 | Planned 2011 | Projected 2011 | Current 2011 | Planned 2012 |
|---|---|---|---|---|---|
| Annualized Salary | $ 44,000.00 | $ 44,000.00 | | $ 44,000.00 | $ 44,000.00 |
| Advance | $ 10,999.92 | $ 11,000.00 | $ 10,999.92 | $ 10,999.92 | $ 9,500.00 |
| Total | $ 54,999.92 | $ 55,000.00 | | $ 54,999.92 | $ 53,500.00 |
| Per Pay Period Total | $ 2,291.66 | $ 2,291.67 | | $ 2,291.66 | $ 2,229.17 |

2012 401k Contribution: 4%
2012 Company 401k Match: 4%
Max 401k Match: 4%
Match Loss: 0%

Est. Profit Sharing Contribution: 4%
Eligibility Date for Profit Sharing: 7/1/2008

Employee ID: 23124
Branch: 0638, Los Angeles Global Forwarding
Most Recent Hire Date: 5/7/2007

^ Planning based on the projected 2011 year-end finish

* For each decrease of $ 100,000.00 below $ 1.00, bonus decreases by $ 0.00

* For each increase of $ 100,000.00 above $ 243,701.69, bonus increases by $ 250.00

**Poublon,Lorrie Ann**
**Financials - GN Revenue - LOS ANGELES GF Rollup**

| | 2 | 3^ | 4 | 5 | 6 | 7 (GOAL) | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| GN Revenue | $ 1.00 | $ 1.00 | $ 40,617.77 | $ 81,234.57 | $ 121,851.35 | $ 162,468.12 | $ 203,084.89 | $ 243,701.69 |
| GN Growth %ages | 0.00% | 0.00% | 4061677.25% | 8123356.50% | 12185034.75% | 16246712.00% | 20308389.25% | 24370068.50% |
| Planned GN Bonus | $ 10,500.00 | $ 11,000.00 | $ 12,000.00 | $ 13,000.00 | $ 14,000.00 | $ 15,000.00 | $ 15,500.00 | $ 16,000.00 |
| Planned FIN Bonus % Change | -12.50% | -8.33% | 0.00% | 8.33% | 16.67% | 25.00% | 29.17% | 33.33% |

**Poublon,Lorrie Ann**
**Planned Total Cash +**

| | 2 | 3^ | 4 | 5 | 6 | 7 (GOAL) | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Planned Total Cash | $ 61,500.00 | $ 62,000.00 | $ 63,000.00 | $ 64,000.00 | $ 65,000.00 | $ 66,000.00 | $ 66,500.00 | $ 67,000.00 |
| Total Cash % Change | 7.98% | 8.85% | 10.61% | 12.36% | 14.12% | 15.88% | 16.75% | 17.63% |

**Historical Financial Information**

| YEAR | MEASURE POINT DESCR | MEASURE TYPE | FINANCIALS | % CHG FROM PRIOR YEAR |
|---|---|---|---|---|
| 2011 | LOS ANGELES GF Rollup | GN_REVENUE | $ -354,242.93 | -287.35% |
| 2010 | LOS ANGELES GF Rollup | GN_REVENUE | $ 189,082.70 | -44.63% |
| 2009 | LOS ANGELES GF Rollup | GN_REVENUE | $ 341,483.16 | |

* Growth: For each Increase of $ 100,000.00 in Gross Net Revenue growth beyond $ 243,701.69, you will earn an additional $ 250.00. Down: For each decrease of $ 100,000.00 in Gross Net Revenue below $ 1.00, your bonus opportunity will decrease by $ 0.00. At no time will bonuses decrease below zero amount. For final Gross Net Revenue results which fall between those displayed, bonus amount will be prorated between the two Gross Net Revenue measures. Amounts are not cumulative.

+ Planned Total Cash is the sum of base salary, financial bonus, objective bonus, and commissions. Objective and Commission at 3(Flat) are reflected up to and included in Bracket 6. Objective and Commission at 7(Goal) are included at the Goal Bracket and above.

^ Planning based on the projected 2011 year-end finish

**Poublon.Lorrie Ann**
**Individual Objectives Summary**

| | Weighting | Comment |
|---|---|---|
| Objective 1 | 50% | Lorrie will receive 5% of Net Revenue for any new account she personally brings in or closes, along with continuing to receive 5% of Dial/Henkel, Broco and Traffix Devices (Ocean and Air Export only on the latter) |
| Objective 2 | 25% | 400 Buy rate Code entered prior to departure to equal above 50% 1st Qtr, above 60% 2nd Qtr, and above 65% 3rd and 4th quarter as a team. Paid in equal quarterly installments. |
| Objective 3 | 25% | 400 Sell rate Code entered prior to departure to equal above 50% 1st Qtr, above 60% 2nd Qtr, and above 70% for 3rd Qtr and above 80% for 4th quarter as a team. Paid in equal quarterly installments. |

***2012 Total Cash at Goal***




***2012 Total Compensation* at Goal***






* All amounts shown are estimates.
Printed: 12/12/2011 12:51:34 PM